## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROUTE 35 SHREWSBURY LIMITED PARTNERSHIP d/b/a THE GROVE AT SHREWSBURY, | Civ. A. No.: |
| Plaintiff, | **COMPLAINT** |
| v. | |
| SUN EQUITY PARTNERS, LLC, AAM MILL, LLC, and SITAR REALTY COMPANY, | (Jury Trial Demanded) |
| Defendants. | |

Plaintiff Route 35 Shrewsbury Limited Partnership d/b/a The Grove at Shrewsbury ("Plaintiff"), by and through its undersigned counsel, Ansell Grimm & Aaron, P.C., for its Complaint against Defendants Sun Equity Partners, LLC, AAM Mill, LLC, and Sitar Realty Company (collectively, "Defendants").

## NATURE OF THE SUIT

1.      This is an action for trademark infringement and unfair competition arising from Defendants' improper use of Plaintiff's trademark and goodwill.  Such acts have injured the goodwill and reputation of Plaintiff and have damaged its business and, unless restrained, will continue to damage Plaintiff and its business relations.

## THE PARTIES

2.      Route 35 Shrewsbury Limited Partnership d/b/a The Grove at Shrewsbury is a New Jersey limited partnership with its principal place of business at 1626 East Jefferson Street, Rockville, Maryland 20852.  It is a wholly owned subsidiary of Federal Realty Investment Trust, a REIT publicly traded on the New York Stock Exchange.

1

3.      Upon information and belief, Sun Equity Partners, LLC is a New York limited liability company with its principal place of business at 655 Third Avenue, New York, New York 10017.

4.      Upon information and belief, AAM Mill, LLC is a New Jersey limited liability company with its principal place of business at 655 Third Avenue, New York, New York 10017.

5.      Upon information and belief, Sitar Realty Company is a New Jersey corporation with its principal place of business at 1481 Oak Tree Road, Iselin, New Jersey 08830.

### JURISDICTION AND VENUE

6.      This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1338(a), and 15 U.S.C. § 1121(a), as the claims arise under the Constitution, laws, or treaties of the United States.  This Court has related claim jurisdiction over the state law statutory and tort claims pursuant to 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a), because Defendants are subject to personal jurisdiction here at the commencement of this action, and 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this district and a substantial part of the property that is the subject of this action is situated in this district.

### FACTS

8.      Plaintiff owns and since at least as early as October 1998 has operated continuously a shopping center known as "The Grove at Shrewsbury" located at 597 Route 35 in Shrewsbury, New Jersey 07702 ("The Grove").

9.      The Grove is a premier, nationally recognized shopping center with nationally recognized, high-end retail tenants.

10.     Tenants and consumers regularly refer to the shopping center as "The Grove" and recognize it by that name.

11.     On or about April 9, 2002, the United States Patent and Trademark Office ("USPTO") issued to Plaintiff a federal service mark registration for the mark "The Grove at Shrewsbury," bearing Registration Number 2557875, in connection with shopping center services.

12.     The registration issued in connection with *shopping center services*, in Class 35.

13.     Plaintiff's rights to the trademark "The Grove at Shrewsbury" are incontestable pursuant to 15 U.S.C. § 1065.

14.     Plaintiff recently learned that Defendants intend to provide shopping center services in geographic proximity to The Grove under the similar name "The Grove at Howell."

15.     "The Grove at Howell" is located at 5313 Route 9 North, in Howell, New Jersey 07731.

16.     "The Grove at Howell" shopping center is approximately sixteen miles from The Grove and both are located in Monmouth County, New Jersey.

17.     Unlike The Grove, "The Grove at Howell" is tenanted to lower-end, "big-box" type retailers and discount tenants.

18.     In addition to having constructive notice under 15 U.S.C. § 1027, upon information and belief, Defendants were aware of Plaintiff's trademark and Plaintiff's rights in and to such trademark, prior to adopting and using the "The Grove at Howell."

19.     Upon information and belief, Defendants chose the name "The Grove at Howell" to confuse and deceive consumers that their goods and services were associated with, approved by, or sponsored by Plaintiff.

20.     The goods and services offered by Defendants in connection with "The Grove at Howell" are similar to and directly competitive with the goods and services provided by Plaintiff under its "The Grove at Shrewsbury."

21.     Such deception and confusion was intentional and designed by Defendants to trade off of and capitalize on Plaintiff's goodwill and reputation.

22.     Plaintiff has no association, affiliation, sponsorship, or any other connection to Defendants.

23.     By letter dated September 12, 2014, Plaintiff demanded that Defendants immediately cease and desist use of the name "The Grove at Howell."  A true and correct copy of the September 12, 2014, demand letter is attached hereto as **Exhibit A**.

24.     The letter expressly warned that:  "As 'The Grove at Howell' intends to provide similar services in geographic proximity to The Grove at Shrewsbury it inevitably will result in unlawful consumer confusion and the dilution of the registered mark."

25.     To date, Defendants have failed to respond to the September 12, 2014, demand letter.

26.     On or about October 6, 2014, Plaintiff learned that Defendants directed an email to Plaintiff's tenants in a patent attempt to capitalize on The Grove's mark and goodwill.  A true and correct copy of the October 6, 2014, email is attached hereto as **Exhibit B**.

27.     The email falsely states that:  "The Grove at Howell is a similar concept to the Grove at Shrewsbury."

28.     The email falsely suggests that The Grove is related to, supports, or endorses Defendants and their use of "The Grove at Howell."

4

29.    The email proceeds to list all of the tenants at The Grove in an attempt to equate the quality of services provided under Plaintiff's mark and its property with those offered by Defendants under "The Grove at Howell."

30.    The email includes a "marketing flyer" specifically and unlawfully intended to solicit Plaintiff's tenants upon the false representation that The Grove and "The Grove at Howell" are affiliated.

31.    The email reflects a deliberate attempt by Defendants to solicit Plaintiff's tenants to lease at "The Grove at Howell."

32.    Defendant Sun Equity Partners also has applied for registration of the mark "GG THE GROVE AT HOWELL," with a design, which the USPTO assigned Application No. 86215851.

33.    The application for registration was made in the face of the confusion Defendants already have caused with The Grove, and the likelihood of continued confusion resulting from Defendants' use of the name "The Grove at Howell."

34.    The USPTO rejected Defendants' application "because of a likelihood of confusion with the marks in U.S. Registration Nos. 2086000, 2557875, and 3340042."  A true and correct copy of the June 20, 2014, office action refusing registration is attached hereto as **Exhibit C**.

35.    Specifically, the USPTO reasoned that Defendant Sun Equity Partners was "seeking to register GG THE GROVE AT HOWELL and design for:  Leasing of real estate; Real estate management of shopping center; Shopping center services, namely, rental of shopping center space."

36.     The USPTO rejected the registration as to "'real estate management of shopping center' in view of Reg. No. 2086000 (GROVE for 'real estate management services') and Reg. No. 2557875 (THE GROVE AT SHREWSBURY for 'shopping center services')."

37.     The USPTO rejected the registration as to "'shopping center services, namely, rental of shopping center space' in view of Reg. No. 2557875 (THE GROVE AT SHREWSBURY for 'shopping center services')."

38.     The USPTO concluded:  "In view of the similarity of the marks and the close relationship of the services, registration is refused under Section 2(d) as outlined above."

39.     On or about June 29, 2014, Defendant Sun Equity Partners responded to the USPTO rejection of its application.

40.     On or about August 15, 2014, the USPTO issued a final office action refusing registration and affirming its conclusion that:

> in view of the similarity of the services and of the services, registration is **FINALLY** refused as to "real estate management of shopping center" in view of Reg. No. 2086000 (GROVE for "real estate management services") and Reg. No. 2557875 (THE GROVE AT SHREWSBURY for "shopping center services") and registration is **FINALLY** refused as to "shopping center services, namely, rental of shopping center space" in view of Reg. No. 2557875 (THE GROVE AT SHREWSBURY for "shopping center services") under Section 2(d) of the Trademark Act.

A true and correct copy of the August 15, 2014, rejection letter is attached hereto as **Exhibit D** (emphasis in original).

41.     By letter dated October 15, 2014, Plaintiff again demanded that Defendants immediately cease and desist use of the name "The Grove at Howell," advising that willful, malicious, and deliberate conduct undertaken by Defendants was causing Plaintiff irreparable injury.  A true and correct copy of the October 15, 2014, demand letter is attached hereto as **Exhibit E**.

6

42.    To date, Defendants have failed to respond to the October 15, 2014, demand letter.

43.    Thus, despite having such notice, Defendants have not ceased nor desisted from their wrongful conduct.

### COUNT ONE
(Trademark Infringement Under the Lanham Act)

44.    Plaintiff incorporates by reference the allegations set forth above as though fully set forth herein.

45.    Defendants' wrongful use of the name "The Grove at Howell" constitutes an infringement of Plaintiff's registered mark "The Grove at Shrewsbury" and is likely to cause confusion, mistake, and deception of the public as to the identity and origin of Plaintiff's goods and services causing irreparable harm to Plaintiff for which there is no adequate remedy at law.

46.    Defendants' infringement is knowing, willful, malicious, and deliberate.

47.    By reason of the foregoing, Defendants are liable to Plaintiff for Trademark Infringement pursuant to 15 U.S.C. § 1114.

### COUNT TWO
(Unfair Competition Under the Lanham Act)

48.    Plaintiff incorporates by reference the allegations set forth above as though fully set forth herein.

49.    Defendants' use of Plaintiff's mark to promote, market or sell their products or services in direct competition with Plaintiff's products and services constitutes Unfair Competition in violation of 15 U.S.C. § 1125(a).

50.    Defendants' use of Plaintiff's mark is likely to cause confusion, mistake, and deception among consumers.

51.     Defendants' unfair competition is knowing, willful, malicious, and deliberate.

52.     Defendants' unfair competition has caused and will continue to cause damage to Plaintiff, and is causing irreparable harm to Plaintiff for which there is no adequate remedy at law.

## COUNT THREE
(False Description Under the Lanham Act)

53.     Plaintiff incorporates by reference the allegations set forth above as though fully set forth herein.

54.     Defendants' wrongful use of Plaintiff's mark is such a colorable imitation and copy of Plaintiff's trademark established in the shopping center services market for consumer products and services that Defendants' use thereof in the context of shopping center services is likely to cause confusion, mistake, and deception among consumers as to the origin, sponsorship, or approval by Plaintiff of the Defendants' counterfeit products and services.

55.     Defendants' false description is knowing, willful, malicious, and deliberate.

56.     Defendants' use of the wrongful use of the name "The Grove at Howell" constitutes a false description or representation of Defendants' services or products in violation of 15 U.S.C. § 1125(a).

## COUNT FOUR
(Trademark Dilution Under the Lanham Act)

57.     Plaintiff incorporates by reference the allegations set forth above as though fully set forth herein.

58.     As a result of Plaintiff's use and promotion of its mark over a sixteen year term, the mark "The Grove at Shrewsbury" has become famous in the relevant marketplace and elsewhere.

59.     Defendants' unauthorized use of Plaintiff's mark constitutes commercial use in commerce and dilutes the distinctive quality of Plaintiff's famous mark.

60.     Defendants' dilution of Plaintiff's mark is knowing, willful, malicious, and deliberate.

61.     Defendants' dilution of Plaintiff's mark has caused and will continue to cause damage to Plaintiff, and is causing irreparable harm to Plaintiff for which there is no adequate remedy at law.

62.     By reason of the foregoing, Defendants are liable to Plaintiff for Trademark Dilution pursuant to 15 U.S.C. § 1125(c).

## COUNT FIVE
(Trademark Infringement Under N.J.S.A. 56:4-1, *et seq.*)

63.     Plaintiff incorporates by reference the allegations set forth above as though fully set forth herein.

64.     Plaintiff's mark is distinctive by virtue of inherent distinctiveness and/or the acquired distinctiveness in the mark, through Plaintiff's efforts of promoting its goodwill and reputation in the relevant marketplace.

65.     Defendants knowingly and willfully adopted, have used and continue to use the name "The Grove at Howell" which is likely to cause confusion, and has caused confusion, in the relevant marketplace, with Plaintiff's mark, in the State of New Jersey, and across numerous other states where Plaintiff and Defendants conduct and promote their business.

66.     Defendants will, if not preliminarily and permanently enjoined by the Court, continue their acts of trademark infringement as defined by N.J.S.A. 56:4-1, thereby deceiving the public, and causing Plaintiff immediate and irreparable harm, damage and injury.

## COUNT SIX
(Unfair Competition Under N.J.S.A. 56:4-1)

67.     Plaintiff incorporates by reference the allegations set forth above as though fully set forth herein.

68.     Defendants wrongful acts constitute unfair competition and unfair business practices in violation of N.J.S.A. 56:4-1.

69.     Defendants will, if not preliminarily and permanently enjoined by the Court, continue their acts of unfair competition as defined by N.J.S.A. 56:4-1, thereby deceiving the public, and causing Plaintiff immediate and irreparable harm, damage and injury.

## COUNT SEVEN
(Tortious Interference)

70.     Plaintiff incorporates by reference the allegations set forth above as though fully set forth herein.

71.     Defendants, individually and collectively, knowingly and intentionally interfered with Plaintiff's business relations with its tenants by, among other things:  (i) directing an email to Plaintiff's tenants in a patent attempt to capitalize on Plaintiff's mark and goodwill; (ii) falsely stating that:  "The Grove at Howell is a similar concept to the Grove at Shrewsbury;" (iii) falsely suggesting that Plaintiff is related to, supports, or endorses Defendants and their use of "The Grove at Howell;" (iv) listing all of the tenants at The Grove in an attempt to equate the quality of services provided under Plaintiff's mark and its property with those offered by Defendants under "The Grove at Howell;" (v) circulating a "marketing flyer" specifically and unlawfully intended to solicit Plaintiff's tenants upon the false representation that The Grove and "The Grove at Howell" were affiliated; and (vi) attempting to solicit Plaintiff's tenants to lease at "The Grove at Howell."

10

72.     Defendants knew, or had reason to know, that Plaintiff has contractual relationships with its tenants.

73.     Defendants acted maliciously and with the sole purpose of harming Plaintiff, without justification or excuse, by interfering with Plaintiff's contractual relations.

74.     Defendants' tortious interference has caused and will continue to cause damage to Plaintiff.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as follows:

a)      That Defendants and their agents, officers, employees, representatives, successors, assigns, attorneys and all other persons acting, for, by, through, or under authority from Defendants, and each of them, be preliminarily and permanently enjoined from:

i.      using Plaintiff's trademark, "The Grove at Shrewsbury," or any colorable imitation thereof, including "The Grove at Howell," as a trademark, trade name, domain name or social media user name;

ii.     using any trademark, trade name, domain name or social media user name that imitates or is confusingly similar to or in any way similar to Plaintiff's trademark "The Grove at Shrewsbury" or that is likely to cause confusion, mistake, deception or public misunderstanding as to the origin of Plaintiff's products or services or their affiliation with Defendants;

b)      That Defendants and their agents, officers, employees, representatives, successors, assigns, attorneys and all other persons acting, for, by, through, or under authority from Defendants, and each of them, transfer, cause to be transferred, or otherwise cooperate fully with the transfer to Plaintiff of all trade names, domain names and social media user names that contain "Grove,"

"The Grove at Shrewsbury," or any colorable imitation thereof, including but not limited to "The Grove at Howell.

    c)     That Defendants and their agents, officers, employees, representatives, successors, assigns, attorneys and all other persons acting, for, by, through, or under authority from Defendants, and each of them, file with the USPTO an express abandonment of Application No. 86215851.

    d)     That Defendants be required to file with the Court and serve on Plaintiff within thirty (30) days after entry of an injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction, transfer(s), and withdrawal referenced above;

    e)     That, pursuant to 15 U.S.C. § 1117, Defendants be held liable for all damages suffered by Plaintiff arising from the acts alleged herein;

    f)     That, pursuant to 15 U.S.C. § 1117, Defendants be compelled to account to Plaintiff for any and all profits derived from the acts alleged herein;

    g)     That, pursuant to 15 U.S.C. § 1118, Defendants be ordered to deliver up for destruction all containers, labels, signs, prints, packages, wrappers, receptacles, and advertisements or the like in the possession, custody, or control of Defendants bearing Plaintiff's mark, as well as all plates, matrices, molds, dies, masters, and other means for making same;

    h)     For damages of not less than $10,000,000.00, and to the extent permitted by law;

    i)     That, pursuant to 15 U.S.C. § 1117, the Court declare this to be an exceptional case and award Plaintiff its full costs and reasonable attorneys' fees;

12

j)      That the Court grant Plaintiff any other remedy to which it may be entitled as provided for in 15 U.S.C. §§ 1116 and 1117 or under state law; and

k)      For such other, further, and additional relief as the Court deems just and proper.

Dated:  Clifton, New Jersey
        October 28, 2014

ANSELL GRIMM & AARON, P.C.

_____
Joshua S. Bauchner, Esq.
Rick Brodsky, Esq.
341 Broad Street
Clifton, New Jersey 07013
Telephone:  (973) 247-9000
Facsimile:  (973) 247-9199
Email:  jb@ansellgrimm.com

*Counsel to Plaintiff*

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues triable before a jury.

Dated:  Clifton, New Jersey
        October 28, 2014

ANSELL GRIMM & AARON, P.C.

_____
Joshua S. Bauchner, Esq.

13